IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| L.S.D. o/b/o J.L.V., Jr.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:23-CV-1203-BR |
| | § | |
| MARTIN O'MALLEY, Acting | § | |
| Commissioner of the Social Security | § | |
| Administration,[2] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff L.S.D., proceeding *pro se*[3] o/b/o J.L.V., Jr.

("Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security

("Defendant"), who denied Plaintiff's claim for Child's Supplemental Security Income ("SSI").

(ECF 1). The parties voluntarily consented to have the undersigned conduct all proceedings in this

case to disposition in accordance with the provisions of 28 U.S.C § 636(c) and Federal Rule of

Civil Procedure 73. (ECF 9). After considering the pleadings, briefs, and administrative record,

---

[1] It is the undersigned's practice to identify the plaintiff using only initials in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is "automatically substituted" for Kilolo Kijakazi as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[3] *Pro se* pleadings are to be liberally construed. *See*, *e.g.*, *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

the Court REVERSES the Commissioner's decision and REMANDS the case for further administrative proceedings consistent with this opinion.

## I.   BACKGROUND

J.L.V. is a young child who was born in 2016. (ECF 7-1 at 19). In March 2016, Plaintiff filed an application for SSI on J.L.V.'s behalf alleging disability commencing in 2016. (*Id.* at 156–75). J.L.V. was found disabled in 2016. (*Id.* at 13). In a June 2018 continuing disability review, J.L.V.'s disability was continued. (*Id.* at 51). Subsequently, on November 2, 2021, another continuing disability review was completed, and it was determined that J.L.V.'s disability had ended. (*Id.* at 61–68, 74–78). After reconsideration, a disability hearing officer affirmed its initial determination that J.L.V.'s disability ended as of November 2, 2021. (*Id.* at 69–73, 86–94).

Plaintiff requested a hearing before an ALJ, and she appeared telephonically before an ALJ on June 14, 2023, which was her preference. (ECF 7-1 at 38–50, 93). After reviewing the evidence, the ALJ issued his decision on August 17, 2023, concluding J.L.V.'s disability ended as of November 2, 2021, and he had not become disabled again since that date. (*Id.* at 10–27). Ultimately, the ALJ found that at the time of the comparison point decision (CPD) dated June 18, 2018, J.L.V.'s speech and language impairment represented a medically determinable impairment that functionally equaled the listings. Notably, at the time of the CPD, J.L.V. was found to have "marked" limitations in the domains of acquiring and using information and interacting and relating with others. (*Id.* at 17). The ALJ then found that medical improvement had occurred as of November 2, 2021, and that the impairment(s) J.L.V. had at the time of the CPD did not functionally equal the listings. (*Id.*). Specifically, J.L.V. was found to have "no" limitations in the domains of attending and completing tasks, moving about and manipulating objects, caring for

himself, and health and physical well-being and "less than marked" limitations in the domains of acquiring and using information and interacting and relating with others.[4] (*Id.* at 18–25).

In short, the ALJ determined that, since November 2, 2021, J.L.V. did not have an impairment that functionally equaled the listings and had not become disabled again since that date. (*Id.* at 25–27). The Appeals Council denied Plaintiff's request for review on September 26, 2023, which makes the Commissioner's August 17, 2023 decision the final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g). (*Id.* at 7–11, 153–54). Now, having exhausted administrative remedies, Plaintiff seeks judicial review on behalf of J.L.V. (ECF 1).

Plaintiff argues that the ALJ erred at step three of his evaluation of J.L.V.'s functional limitations, specifically by failing to acknowledge substantial evidence and determining that J.L.V. had a "less than marked" limitation in the domain of acquiring and using information and "no" limitation in the domain of attending and completing tasks. (*See* ECF 15).

## II.   LEGAL STANDARD

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). "Substantial evidence is 'more than a mere scintilla and less than a preponderance.'" *Id.* (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The Commissioner [of the Social Security Administration], and not the courts, resolves conflicts

---

[4] The Court would note that Plaintiff did not challenge the ALJ's determination as it pertains to interacting and relating with others, even though one could argue that the most logical domains to challenge would have been acquiring and using information and interacting and relating with others, as they are the only domains the ALJ found J.L.V. to have "less than marked" limitations.

in the evidence; thereafter, the Court may not 'reweigh the evidence or try the issues de novo.'"

*Tomisha M.W. ex rel. T.M.W. v. Saul*, 2020 WL 1513453, at \*2 (quoting *Martinez v. Chater*, 64

F.3d 172, 174 (5th Cir. 1995) (per curiam)). "Accordingly, the Court may not substitute its own

judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner

stated to support his decision." *Id.* (citing *Copeland*, 771 F.3d at 923).

"The Commissioner's decision is granted great deference and will not be disturbed unless

the reviewing court cannot find substantial evidence in the record to support the Commissioner's

decision or finds that the Commissioner made an error of law." *Leggett v. Chater,* 67 F.3d 558,

564 (5th Cir.1995) (footnotes omitted). In sum, the district court may not reweigh the evidence or

substitute its own judgment for that of the Commissioner; however, the district court must

scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's

findings. *See Fields v. Bowen,* 805 F.2d 1168 (5th Cir.1986) (per curiam).

### III.   DISCUSSION

**A. Whether the Additional Evidence Plaintiff Submitted By Plaintiff Requires Remand or Can Be Considered By the Court.**

On June 14, 2024, Plaintiff submitted approximately 35 pages of additional evidence that

she wished for the Court to consider, which is made up of the results from an FIE ("Full and

Individual Evaluation") of J.L.V. dated February 8, 2024. (ECF 20). Plaintiff filed this evidence

on the date her reply brief was due, presumably in lieu of filing a reply brief. (*See id.*). To address

Plaintiff's submission of new evidence, the Commissioner filed a Response. (ECF 21). Finally, on

July 2, 2024, Plaintiff filed a Reply (ECF 22) in support of her additional evidence being

considered.

Pursuant to 24 U.S.C. § 405(g), a court may remand a case to the Commissioner for the

taking of additional evidence "only upon a showing that there is new evidence which is material

and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See* 24 U.S.C. § 405(g). To necessitate remand, the additional evidence must be (1) new, (2) material, and (3) the claimant must show good cause for not incorporating such evidence during the administrative proceedings. *See Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

Critical here, to qualify as "material," the evidence must *relate to the period at issue* and show a "reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (emphasis added). Here, Plaintiff cannot show the additional evidence she filed is material because the evidence does not relate to the adjudicated period in this case. The ALJ's decision was issued August 17, 2023—six months before the February 2024 FIE results that Plaintiff submitted on June 14, 2024. (*See* ECF 20); *see also Castillo v. Barnhart*, 325 F.3d 550, 551–52 (5th Cir. 2003) (denying remand for consideration of a physician's letter that the claimant was in "poor physical health from August 1995 on" when the relevant period ended on June 30, 1995).

Accordingly, the filing of the additional evidence does not warrant remand, and the Court will not consider the additional evidence as part of the basis for this opinion.

**B. Whether the ALJ Properly Found That None of J.L.V.'s Impairments or Combination of Impairments Met or Medically Equaled the Severity of a Listing or Functionally Equaled a Listing.**

To determine whether a minor has a disability, an ALJ engages in a three-step process: "(1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment that is severe; and (3) whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations." *Swist ex rel. Green v. Barnhart*,

177 F. App'x 414, 416 (5th Cir. 2006) (per curiam) (internal quotation marks and citations omitted).

At step three, the ALJ must determine whether the claimant's impairment leads to "a marked limitation" in two, "or an extreme limitation in one," of the following six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Swist*, 177 F. App'x at 416 (citing 20 C.F.R. § 416.926a(b)(1)). The ALJ "will find" that the child has a "marked" limitation in a domain "…when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limits several activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation will be found "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). The Fifth Circuit has stated that "[t]he ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination."

Here, Plaintiff does not contest the ALJ's findings with respect to the following domains as they pertain to J.L.V.: interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. (ECF 15 at 1). Instead, Plaintiff contests the ALJ's findings at step three with respect to the domains of acquiring and using information and attending and completing tasks. (*See id.*). At step three, the ALJ found that J.L.V. has a "less than marked" limitation in the functional domain of acquiring and using information

and "no" limitation in the functional domain of attending and completing tasks. (ECF 7-1 at 19–21).

The ALJ's analysis is insufficient for the Court to determine whether substantial evidence supports his decision that J.L.V. has a "less than marked" limitation in the domain of acquiring and using information. On the contrary, substantial evidence supports the ALJ's determination that J.L.V. has "no" limitation in the domain of attending and completing tasks.

1. **The ALJ's analysis is insufficient for the Court to determine whether substantial evidence supports his determination that J.L.V. has a "less than marked" limitation in the domain of acquiring and using information.**

The ALJ failed to build a logical bridge between the evidence and his final determination as to J.L.V.'s limitation in the domain of acquiring and using information. In other words, the ALJ's analysis is insufficient for the Court to determine whether substantial evidence supported his determination.

In the acquiring and using information domain, the Commissioner should "consider how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). Specifically, for school-age children[5] (age 6 to attainment of age 12), a child should:

> be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

*Id.* at § 416.926a(g)(2)(iv).

---

[5] J.L.V. is currently a "school-age child"; however, for the purposes of clarity, J.L.V. was a "preschool-age child" until 2022. In 2022, J.L.V. became a school-age child.

In his analysis, the ALJ noted that J.L.V. was "found to have a 12% delay in communication and a 16% delay at the March 2018 ECI occupational therapy evaluation." (ECF 7-1 at 20). In support of the ALJ's finding that J.L.V. has a less than marked limitation in the domain of acquiring and using information, however, the ALJ wrote the following:

> [A]t the February 2020 FIIE, the claimant was meeting state grade level expectations in reading, math, and writing (Exhibit 3F-4). It was determined that the claimant did not meet the criteria for a specific learning disability (Exhibit 3F-14, 16, 4F-4). The claimant had an IEP [in] place in the first grade (Exhibit 15E-5). He was not placed in special education classes, but received additional services in general education classes. In October 2022, he was receiving interventions in math and reading (Exhibit 16E-3). In May 2023, he was receiving intervention in math (Exhibit 17E-2).

(*Id.*).

In contrast, Plaintiff argues that J.L.V. has a marked limitation in the domain of acquiring and using information. (ECF 15 at 2). In support of her argument, one piece of evidence Plaintiff cites to is Exhibit 15E. (*Id.*; *see also* ECF 7-1 at 287–294). Within Exhibit 15E are the results from a DIBELS (Dynamic Indicators of Basic Early Literacy Skills) evaluation of J.L.V. conducted on January 18, 2023, which is essentially an evaluation tool to measure a child's early literacy skills. (ECF 7-1 at 292–294). The results of the January 2023 DIBELS evaluations run contrary to the ALJ's finding that J.L.V. has a "less than marked" limitation in the domain of acquiring and using information. (*See id.*).

For example, in the "Letter Names" category, which evaluates how well a child can name uppercase and lowercase letters, J.L.V. scored a 29, on a scale where 57 is the benchmark[6]— putting him at a level "well below benchmark." (*Id.* at 292). Likewise, in the "Phonemic Awareness" category, which evaluates how well a child can identify the first, middle, and last

---

[6] "Benchmark" in this context essentially means median or average. The "Performance Level Key" in the exhibits describes it as the "Goal."

sound in the word "sun," J.L.V. scored a 13, on a scale where 43 is the benchmark—putting him

at a level "well below benchmark." (*Id.*). In the "Decoding" category, which evaluates how well a

child can sound out simple words and read simple words, J.L.V. scored a 19 on the "reading letter

sounds" subscale, where 52 is the benchmark—putting him at a level "well below benchmark,"

and a 1 on the "reading whole words" subscale, where 14 is the benchmark—again putting him at

a level "well below benchmark." (*Id.*). Finally, in the "Accurate and Fluent Reading" category,

J.L.V. scored a 2 on the "reading common words" subscale, where 17 is the benchmark—putting

him at a level "well below benchmark," a 3 on the "reading with accuracy" subscale, where 87 is

the benchmark—putting him "well below benchmark," and a 1 on the "reading with fluency"

subscale, where 21 is the benchmark—yet again, putting him "well below benchmark." (*Id.*). This

rather staggering evidence of five categories of "well below benchmark" would tend to support

J.L.V. having some level of limitation in the domain of acquiring and using information beyond

"less than marked." (*See* ECF 7-1 at 20).

In sum, it is apparent that J.L.V. has considerable issues with acquiring and using

information based on the DIBELS evaluations in the record. The Court will not go through the

results from the September 2022 DIBELS evaluation of J.L.V. in the administrative record;

however, the results from it are largely the same as the one from January 2023—indicating J.L.V.

has serious issues with reading and writing, which is directly relevant in evaluating J.L.V.'s

limitation in the domain of acquiring and using information. (*See* ECF 7-1 at 301) ("[J.L.V.] needs

additional instructional support and practice to meet grade-level expectations in DIBELS."). Like

in the previously mentioned January 2023 DIBELS evaluation, in the September 2022 DIBELS

evaluation, J.L.V. was found to be "well below benchmark" in "Letter Names," "Phonemic

Awareness," "Decoding," and "Accurate and Fluent Reading." (*See id.*). These DIBELS

evaluations are relevant in determining J.L.V.'s limitation in the domain of acquiring and using information. Notably, according to the regulations, a school-age child, like J.L.V., "should be able to learn to read, write, and do math, and discuss history and science" and "use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas…" *See* C.F.R. 20 § 416.926a(g)(2)(iv). The evidence in the DIBELS evaluations demonstrates that J.L.V. has continued to seriously struggle with the basics of both reading and writing. (*See* ECF 7-1 at 297, 304). It is further troubling that the results from the DIBELS evaluations directly contradict the ALJ's reference to the February 2020[7] FIIE ("Full and Individual Initial Evaluation"), when J.L.V. was initially found to be meeting grade level expectations in reading, math, and writing. Concerningly, the ALJ did not reconcile this competing evidence in his analysis before making his determination. (*See* ECF 7-1 at 20)

Moreover, in an October 18, 2021 Speech and Language Evaluation (ECF 7-1 at 418–420), the following was noted under the "Articulation" heading for J.L.V.:

> The Goldman Fristoe Test of Articulation-Third Edition (GFTA-3) was administered formally to assess [J.L.V.]'s articulation skills. The GFTA-3 is a standardized test with a mean score of 100 and a standard deviation of 15. Scores between 85 and 115 are considered to fall within average range. [J.L.V.]'s raw score of 28 corresponds to a standard score of 78, placing him in the **7th percentile** compared to norms established for his age and gender. This formal score falls more than one standard deviation below the mean and is at the 3 year 4 month old level. His **speech was judged to be 70% intelligible** in known context and improved upon repetition.

(*Id.* at 419) (emphasis added). Like J.L.V.'s deficiencies with reading, writing, and spelling highlighted on the DIBELS evaluations, J.L.V. is in the 7th percentile for a child of his age and

---

[7] The Court notes that the single evaluation the ALJ relied on was conducted more than a year before the September 2022 and January 2023 DIBELS evaluations, as well as before the October 2021 GFTA-3 and OWLS II tests.

gender for articulation according to a standardized test. (*See id.*). This is further evidence of J.L.V.'s serious, and legitimate limitations in the domain of acquiring and using information.

As part of the same Speech and Language Evaluation from October 2021, J.L.V. was also administered the Oral and Written Language Scales-Second Edition (OWLS II). (*Id.* at 420). J.L.V.'s "performance on the two subjects of OWLS II resulted in an Oral Composite Standard Score of 73, which places him in the **4th percentile** relative to the norms established for his age." (*Id.*) (emphasis added). His performance on OWLS II "reflects a moderate language disorder when compared to same-aged peers." (*Id.*). At the end of the October 2021 Speech and Language Evaluation, there is a "Summary and Recommendations" portion, which among other things, states the following: "[J.L.V.] presents with overall language skills in the moderately impaired range for his age. Articulation skills during formal evaluation fell more than one standard deviation below the mean and his speech is 70% intelligible." (*Id.*). The aforementioned tests and evaluations contradict the ALJ's analysis and ultimate determination that J.L.V. has a "less than marked" limitation in the domain of acquiring and using information and that he is generally meeting grade-level expectations.

Additionally, in his brief analysis, the ALJ cited to evidence that would tend to support J.L.V. may have at least a "marked limitation" in the domain of acquiring and using information, if not an "extreme" limitation. (*See* ECF 7-1 at 20). For example, the ALJ noted that J.L.V. was receiving educational intervention in math and reading in October 2022, and that he was receiving intervention in math in May 2023. (*Id.* at 20, 297, 304). And he cited to the DIBELS evaluations that show J.L.V.'s significant and serious deficiencies in reading and writing for a child his age. (*See* ECF 7-1 at 297, 304). The ALJ's analysis that led to a determination that J.L.V. has a less

than marked limitation in the domain of acquiring and using information is insufficient to allow the Court to determine whether substantial evidence supports his decision.

Based on the foregoing, the case should be remanded for further administrative proceedings related to the ALJ's finding that J.L.V. has a "less than marked" limitation in the domain of acquiring and using information.

**2. Substantial evidence supports the ALJ's finding that J.L.V. has "no" limitation in the domain of attending and completing tasks.**

Under this domain, the ALJ must analyze the claimant's ability to focus and maintain attention and carry through and finish activities. 20 C.F.R. § 416.926a(h). A child of J.L.V.'s age should:

> be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id.* at § 416.926a(h)(iv).

Here, substantial evidence in the record supports the ALJ's determination that J.L.V. has no limitation in the domain of attending and completing tasks. In making his determination, the ALJ noted the following:

> Since November 2, 2021, the claimant has had no limitation in attending and completing tasks as a result of the impairment present at the CPD. The claimant did not exhibit any significant attentional problems at the February 2020 FIIE (Exhibit 3F-5). His attention span was appropriate with redirection at the October 2021 consultative speech/language evaluation (Exhibit 6F-3). Accordingly, the claimant has no limitation in this functional domain.

(ECF 7-1 at 21). As stated, substantial evidence supports the ALJ's conclusion. For example, the ALJ cited to a Speech and Language Evaluation of J.L.V. on October 18, 2021. (*Id.* at 418–420). The "Behavioral Observations" of that evaluation noted that J.L.V.'s "attention span was appropriate with redirection." (*Id.* at 419). Likewise, when observed in the classroom setting while his teacher read a book, J.L.V. attend to the story well. (*Id.* at 341). Finally, at his October 2021 Speech and Language Evaluation, it was noted that his "pragmatic skills are appropriate." (*Id.* at 420).

Accordingly, the Court finds that the ALJ's determination that J.L.V. has no limitation in the domain of attending and completing tasks is supported by substantial evidence.

## C. Whether Reversal or Reversal and Remand Is Appropriate.

Because the Court has found the ALJ's analysis insufficient in one domain, and to receive benefits a child must have "'marked limitations' in two domains… or an 'extreme' limitation in one domain," 20 C.F.R. § 416.926a(a), the Court must decide whether to reverse and remand, or simply reverse, the ALJ's decision. "[A] district court may direct an award of benefits where the record has been fully developed and further administrative proceedings would serve no useful purpose." *McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999).

Unlike this case, in *McQueen*, "nothing in the record… support[ed]" the Commissioner's decision. *See* 168 F.3d at 156. Here, however, the Court notes that there is some evidence to support the ALJ's decision (*see* ECF 7-1 at 20)—but that the ALJ's analysis is insufficient for the Court to determine whether substantial evidence supported the ALJ's decision. Under these circumstances, the Court finds it appropriate to REVERSE and REMAND to the Social Security Administration for further proceedings.

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and the case is

REMANDED to the Social Security Administration for further administrative proceedings.

IT IS SO ORDERED.

ENTERED July 10, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE